# Wytheville.

## HUGHSON, TRUSTEE, V. DAMERON AND OTHERS.

### June 13, 1912.

1. FRAUDULENT CONVEYANCES—*Res Judicata—Proceedings in Rem.*—In a suit to set aside as fraudulent a transfer of patent rights from a husband to his wife, a decree reciting a satisfactory compromise and agreement between the parties, and striking the case from the docket at the costs of the complainant, is not *res judicata* as to another debt for which the complainant subsequently obtained judgment against the husband; nor is it a proceeding *in rem* in the sense that it settled the wife's title to the patent rights, so far as demands not asserted in that case are concerned.

2. HUSBAND AND WIFE—*Fraudulent Conveyances—Presumption—Burden of Proof—Case in Judgment—Accounting.*—In a suit between creditors of an insolvent husband and his wife to avoid a transfer of property from the husband to the wife, the burden of showing the *bona fides* of the transaction, and that it was made upon valuable consideration, is cast upon the wife. In the case in judgment, the evidence shows that the wife did assume liabilities for her husband under such circumstances as to create a *quasi* relation of principal and surety between them, and the assignment to her by her husband of certain patent rights, in consideration of such assumption, should be held valid to the extent to which it may be necessary to indemnify her for her expenditures. As to the method of stating the account, see opinion of the court.

Appeal from a decree of the Circuit Court of Campbell county. Decree for the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Poindexter & Hopwood, Wilson & Manson,* and *James D. Johnston,* for the appellant.

*Whitehead & Whitehead* and *Alfred B. Percy,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

This is a suit in equity brought by appellant, as trustee in bankruptcy of J. C. Dameron, to set aside a transfer from the bankrupt to his wife, N. M. Dameron, of the grantor's 85–100ths interest in two letters patent, the one to a hay press and the other to a baling press. The assignment, which on its face purports to be for the nominal consideration of $5.00, is dated January 1, 1910, and was recorded in the United States Patent Office eleven days thereafter.

The bill charges that the assignment was voluntary, and made for the purpose of hindering, delaying, and defrauding the husband's creditors. From a decree denying relief and dismissing the bill, this appeal was granted.

Adopting the language of the brief of counsel for appellees, "The theory of the defense to this suit is two-fold. First. That the decree dismissing the suit styled *The Roanoke Sheet Metal Co.* v. *Dameron* was an adjudication of the title to said patents in N. W. Dameron, (*a*) as to Adams, Payne & Gleaves, Inc., because the suit was for the same purpose and was between the same parties, and was a decision on the merits; (*b*) that The Roanoke Sheet Metal Co.'s suit was a proceeding *in rem*, and partakes of a public nature, and may be pleaded even against strangers. Second. That the conveyance of the letters patent to N. W. Dameron was a settlement upon her of this property in consideration of the fact that she had mortgaged her estate to secure the payment of money which her husband owed."

The suit of the Roanoke Sheet Metal Company, a judgment creditor of J. C. Dameron, was brought against him and his wife and C. W. Wade to set aside the transfer from the husband to the wife of his interest in the patent rights, on the ground that it was voluntary and fraudulent; 15–100ths of these patent rights were admittedly owned by Wade. Adams, Payne & Gleaves, Inc., and other creditors of J. C. Dameron, filed petitions in the suit, asking to be made parties, and seeking to subject the husband's interest to the satisfaction of their debts. The case was pending in the Law and Chancery Court of the city of Roanoke, and at the June term, 1910, there was a final decree, reciting that

it appearing to the court that a satisfactory compromise and
settlement had been effected, the case was stricken from the docket
at the costs of the plaintiff and petitioning creditors. In point
of fact, the evidence shows that Wade purchased and took assign-
ments of all demands asserted in the suit, which was afterwards
dismissed by the decree referred to. These debts, aggregating
upwards of $3,000, were bought at a discount by Wade, who took
the joint note of J. C. Dameron and his wife for the full amount
thereof, secured by a deed of trust on the 85–100ths interest in the
patents, in which the husband and wife united. In addition to
the debt asserted by Adams, Payne & Gleaves, Inc.; in that
suit, the firm held a separate demand against J. C. Dameron,
upon which they subsequently brought an action at law. The
case was contested, but resulted in the recovery of a judgment
for the plaintiff for $1,957.50, with interest and costs. Within less
than four months after the date of this judgment, J. C. Dameron
was, upon his own petition, adjudged a bankrupt, and listed
the judgment in his schedules as a subsisting debt against his estate.

Upon these facts, we fail to appreciate the force of the con-
tention of appellees that the decree of the Law and Chancery
Court dismissing the suit of the Roanoke Sheet Metal Co. is *res
adjudicata* as to the judgment of Adams, Payne & Gleaves, Inc.,
which had not been recovered at that time, and was in no way
involved in that litigation.

Nor can we assent to the proposition that the Roanoke Sheet
Metal Company's suit was a proceeding *in rem*, in the sense that
the decree therein settled the title of N. W. Dameron to the patent
rights, so far as demands not asserted in that case are concerned.

We are, moreover, of opinion that the evidence does not es-
tablish actual fraud against J. C. Dameron in the transfer to his
wife of the 85–100ths interest in the letters patent.

The sole question for our determination, therefore, is whether
or not the assignment was voluntary and void as to *existing
creditors* of the grantor, under Va. Code, 1904, section 2458.

It is the settled doctrine in Virginia that in a suit between
creditors of an insolvent husband and his wife to avoid a transfer
of property from the husband to the wife, the burden of showing
the *bona fides* of the transaction, and that it was made upon a

77

valuable consideration, is cast upon the wife. The decisions of this court upon that proposition are too numerous and too recent to require citation.

The evidence shows that the husband, who was the inventor of the hay press and baling press, did not have the necessary means to perfect and patent his devices. The wife, on the other hand, owned a house and lot in the city of Roanoke and some property in the country. From time to time, both before and after the assignment, she advanced money to her husband in connection with these patents and in paying his debts, using her separate estate as a basis of credit to raise money for those purposes. It furthermore appears that the wife assumed these liabilities under such circumstances as to create a *quasi* relation of principal and surety between her husband and herself, and it is clear, under the authorities, that the assignment should be held valid to the extent to which it may be necessary to indemnify her for such expenditures. *William and Mary College* v. *Powell*, 12 Gratt. (53 Va.) 372, 385; *Rixey* v. *Deitrick*, 85 Va. 42, 6 S. E. 615; *Miller* v. *Ferguson*, 110 Va. 222, 65 S. E. 564.

In April, 1910, the Dameron Machinery Corporation was organized with $80,000 of common stock, and acquired the patent rights for $10,000 in money and five *per cent.* of the common stock. Of the $10,000, $5,500 was paid to Mrs. Dameron in cash. In addition to the common stock, there was also to be an issue of preferred stock, each share of which carried as a bonus one share of common stock. J. C. Dameron, as attorney-in-fact for his wife, subscribed to fifty shares of preferred stock, upon which $2,750 was paid.

Our conclusion upon the foregoing facts is that the decree of the circuit court is erroneous, and must be reversed, and the case remanded for further proceedings looking to an accounting between J. C. Dameron and his wife. And upon such settlement Mrs. Dameron is to have credit for all expenditures made by her on behalf of her husband, and shall be charged with the net amount received by her in money from the sale of his interest in the patents. There must also be an account of subsisting debts against J. C. Dameron, which were contracted prior to January 1, 1910. And if upon such accounting a balance shall be found against Mrs.

Dameron, such balance will constitute an ultimate asset to be resorted to in the event it shall become necessary to discharge the debts of the class referred to, after exhausting the stock in the Dameron Machinery Corporation held by Mrs. Dameron by virtue of the assignment from her husband. But, in the event there should be a balance in her favor, such balance shall constitute a prior claim against the assets. And, finally, if a surplus shall remain after satisfying the debts of the specified class, such residuum shall be decreed to Mrs. N. W. Dameron.

*Reversed.*